IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JENNIFER LOUISE SPARKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:11-cv-582-CSC |
| | ) (WO) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Jennifer Louise Sparks, applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. (R. 120). Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") Mary E. Helmer. Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Pursuant

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Sparks was 45 years old at the time of the hearing before the ALJ. (R. 120). She has at least an eighth grade education and possibly a GED.⁴ (R. 35). Her prior

---

³ *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

⁴As the ALJ noted in her opinion, there is some conflict in the record as to the extent of Sparks's education. (R. 18). Sparks testified at the hearing in this case that she did not have a GED and that the highest grade she completed in school was 8th grade. (R. 35). However, in her psychological disability

work experience includes work as a file clerk. (R. 50). Following the administrative hearing, the ALJ concluded that the Sparks has severe impairments of "status post myocardial infarction with PTCA and stent placement 2002 with subsequent PTCA in 2002, 2003 and March 2008; degenerative disc disease of the cervical and lumbar spine; status post cervical fusion times (sic) with subsequent removal of hardware; obesity; pancreatitis, and depression." (R. 13). The ALJ found that Sparks had the residual functional capacity to perform sedentary work, with the following limitations:

> lift 20 pounds maximum; sit 6 hours or more per day; walk/stand up to 2 hours per day; frequently lift/carry up to 10 pounds; push/pull arm controls 2-6 hours/day; push/pull leg controls 8 hours/day; reach above shoulder; manipulate fingers adequately; use hands and wrists adequately; and hear and see adequately. The claimant would have limitations in cold temperatures; and problems with wetness, dust, humidity, fumes, poor ventilation, and odors. The claimant can walk 1/4 mile at one time without rest. She is unable to stoop, climb or crawl. In addition, . . .the claimant is expected to understand, remember and carry out short, simple instructions and tasks but would likely have difficulty with more detailed tasks and instructions; the claimant would be expected to maintain attention and concentration for 2 hours with all customary rest breaks; a well spaced work environment would be best for maximum concentration; the claimant would likely miss 1-2 days/month due to psychiatric symptoms; contact with the public should be infrequent and nonintensive; supervision should be tactful and constructive and non-threatening; and changes in the workplace should be infrequent and gradually introduced.

(R. 14-15).

In addition, the ALJ determined that Sparks had the ability to bend "at least

---

examination, she reported that she dropped out of school in the 10th grade and later completed her GED. (R. 386). In her disability report, she reported that she obtained her GED in 1981. (R. 148). The ALJ noted the discrepancy and, for purposes of the ALJ's decision, the ALJ found that Sparks had only a limited education. (R. 18, 20).

occasionally."  (R. 20).

The ALJ determined that Sparks could not perform her past relevant work. (R. 20). Nonetheless, based on the testimony of the vocational expert, the ALJ concluded that a significant number of jobs exist in the national economy that Sparks could perform, including sedentary unskilled jobs as a document scanner, information clerk, and table worker. (R. 21). Accordingly, the ALJ concluded that Sparks is not disabled.  (*Id*.).

**B. The Plaintiff's Claims.**  As framed by the plaintiff, the issues presented are

(1)   whether Sparks's inability to stoop renders her unable to perform any sedentary work;

(2)   whether the ALJ erred in finding that Sparks has the residual functional capacity to bend occasionally; and

(3)   whether the ALJ failed to develop the record in disregarding Sparks's treating physician's conclusion that Sparks could not work.

(Plaintiff's brief at 1).

### IV.  Discussion

**A.   The ALJ did not err in finding the Sparks's inability to stoop did not prevent her from performing sedentary jobs available in the national economy.**

Citing SSR 96-9p, Sparks argues the "even unskilled sedentary work requires an ability to stoop occasionally."  (Plaintiff's brief at 11).  Because the ALJ found that Sparks could not stoop at all (R. 14), Sparks challenges the finding that she can perform certain unskilled sedentary jobs in the national economy.

The ALJ found that Sparks "has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) and within the limitations as set forth in the Residual

Functional Capacity Chart (Physical) completed by Dr. Pantaleone" (which includes the inability to stoop) and within certain mental limitations.  The court notes that 20 CFR § 416.967(a) defines sedentary work without any reference to stooping.  20 CFR § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

Further, contrary to Sparks's argument, SSR 96-9p does not provide a one-size-fits-all rule that all "sedentary work requires an ability to stoop occasionally." (Plaintiff's brief at 11).  Rather, SSR 96-9p holds:

> Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50[5] to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.
>
> . . . .
>
> An ability to stoop occasionally; *i.e.*, from very little up to one-third of the time, is required in *most* unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would *usually* apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. *Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.*

---

[5][Sparks was born June 24 , 1964 (R. 120); thus, she is an "individual under age 50."].

> . . . .
>
> When the extent of erosion of the unskilled sedentary occupational base is not clear, the adjudicator may consult various authoritative written resources, such as the [Dictionary of Occupational Titles ("DOT")], the SCO, the Occupational Outlook Handbook, or County Business Patterns.
>
> In more complex cases, the adjudicator may use the resources of a vocational specialist or vocational expert. The vocational resource may be asked to provide any or all of the following: An analysis of the impact of the RFC upon the full range of sedentary work, which the adjudicator may consider in determining the extent of the erosion of the occupational base, examples of occupations the individual may be able to perform, and citations of the existence and number of jobs in such occupations in the national economy.

SSR 96-9p at *2, 8-9 (Westlaw 2012) (emphasis added; original footnotes omitted).

Consistent with SSR 96-9p, the ALJ correctly concluded that Sparks's functional limitations (including the inability to stoop) limited her to less than a full range of sedentary work, and the ALJ also consulted a vocational resource in considering whether Sparks's functional limitations prevented her from performing *any* sedentary jobs available in the national economy. *See* SSR 96-9p at *2, 8-9. Specifically, the ALJ held:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.25. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, *and residual functional capacity*. The vocational expert testified that *given all of these factors* the individual would be able to perform the requirements of representative occupations such as document scanner (DOT # 249.587-018, sedentary, unskilled) with 700 jobs regionally and 788,000 jobs nationally; information clerk (DOT # 237.367-046, sedentary, unskilled) with 800 jobs regionally and 320,000 jobs

> nationally; and table [worker] (DOT # 739.687-182, sedentary, unskilled) with 800 jobs regionally and 420,000 jobs nationally.
>
> . . . .
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(R. 21) (emphasis added).

Accordingly, the ALJ applied the correct legal standards in considering whether Sparks's functional limitations, including the inability to stoop, rendered Sparks unable to perform sedentary jobs that are available in significant numbers in the national economy. Further, her conclusion on this point is supported by substantial evidence, *i.e.*, the testimony of a vocational expert who was asked a hypothetical that included all of Sparks's functional limitations.  (R. 50-51) (VE's testimony in response to a hypothetical asking him to assume "all the limitations assessed in Exhibit 16F;" Exhibit 16 F is a residual functional capacity assessment that includes the finding that Sparks cannot stoop); *see Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (holding that a VE's testimony constitutes substantial evidence where the VE testifies in response to a hypothetical question that "comprises all of the claimant's impairments").  Therefore, the court finds no merit in Sparks's argument that her inability to stoop renders her disabled.

B.  **The ALJ did not commit reversible error in finding that Sparks has the residual functional capacity to bend occasionally.**

On October 26, 2009, Sparks's treating physician, Dr. Pantaleone, completed a functional capacity assessment finding, among other things, that Sparks was unable to bend, stoop, or crawl. (R. 417-21). In her opinion, the ALJ found that Sparks was able to bend "at least occasionally." (R. 14, 20). In so finding, the ALJ discounted Dr. Pantaleone's October 29, 2009, finding that Sparks could not bend at all, partly based on Sparks's medical records, and partly based on the assumption that "sitting requires bending." (R. 20). Sparks challenges the ALJ's assumption that "sitting requires bending" and the ALJ's finding that she can bend occasionally.

Dr. Pataleone's October 26, 2009 residual functional capacity assessment is Exhibit 16F in the administrative record. (R. 417-21). At the administrative hearing, the ALJ posed a series of hypothetical questions to the vocational expert ("VE"), describing the plaintiff's physical and mental limitations as follows:

> Assume I find an individual the claimant's same age, education, and work experience as the claimant, *who is limited to all the limitations assessed in Exhibit 16F*. . . Who also has the limitations, let's see, assessed in 14F, Page 3, which is, would be expected to understand, remember, and carry out short, simple instruct1ons and tasks but would likely have difficulty with more detailed tasks and 1nstructions. Would likely have more trouble with detail [INAUDIBLE] it states the same thing. Would be expected to maintain concentration for two hours with customary rest breaks. A well-spaced work environment would be best for maximum work concentration. Likely to miss one to two days a month. Contact with the public should be infrequent and non-intensive. Supervision should be tactful, and constructive, and non-threatening. And changes in the workplace should be infrequent and gradually introduced.

9

(R. 50-51) (emphasis added).

Given those limitations – *which would necessarily include the inability to bend* (as one of "the limitations assessed in Exhibit 16F" (R. 50-51)) – the VE testified that Sparks was unable to perform her previous work, but could perform other sedentary, unskilled jobs available in the national economy such as document scanner (DOT # 249.587-018), information clerk (DOT # 237.367-046), and table worker (DOT # 739.687-182).[6] Relying on the VE's testimony, the ALJ determined that Sparks was not disabled because she had the residual functional capacity to perform jobs available in the national economy, including the jobs listed by the VE. (R. 21). *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (holding that, "in order to be considered disabled, the claimant must . . . prove that [s]he is unable to perform the jobs that the Commissioner lists" as "other work available in significant numbers in the national economy that the claimant has the capacity to perform").

Because the ALJ's finding that Sparks could perform work available in significant numbers in the national economy was based on VE testimony that *did* incorporate the

---

[6]The court notes that the DOT does not indicate that any of these three occupations requires any bending. Regardless of the contents of the DOT, however, the ALJ was entitled to rely on the VE's testimony that someone of Sparks's same age, education, work experience, and limitations (including the inability to bend) could perform sedentary work, including work as a document scanner, information clerk, and table worker. *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (holding that an ALJ may rely on the testimony of the VE even if that testimony differs from the specifications listed in the DOT); *see also Jones v. Comm'r of Soc. Sec.*, 423 Fed. Appx. 936, 939 n.4 (11th Cir. April 19, 2011) (following *Jones v. Apfel* to hold that, "in this circuit, a VE's testimony trumps the DOT to the extent the two are inconsistent," and that a Social Security ruling (SSR 00-4p) holding to the contrary is "not binding" in this circuit). Furthermore, the ALJ discharged any arguable duty under SSR 00-4p to consider any conflict with the DOT when she asked the VE if his testimony was consistent with the DOT (R. 53), and when she noted in her opinion that, "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the [DOT]" (R.21). *See Jones v. Comm'r.*, 423 Fed. Appx. at 939 n.4.

complete inability to bend as one of Sparks's functional limitations (R. 21, 50-51; 417-21), the ALJ's finding as to Sparks's ability to bend had no effect on the ALJ's finding that Sparks is not disabled because she can perform available sedentary jobs. Accordingly, the ALJ's decision to discount Dr. Pantaleone's October 2009 finding regarding bending could constitute, *at most*, no more than harmless error. *See Jones*, 190 F.3d at 1229 (holding that an ALJ may rely on the VE's testimony in response to a hypothetical question that "comprises all of the claimant's impairments"). This court will not reverse the decision of the ALJ on the basis of harmless error. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the harmless error rule prevented reversal of an ALJ's decision).

**C.    The ALJ did not fail to adequately develop the record, and the ALJ had good cause to reject Dr. Pantaleone's conclusory opinion that Sparks could not work.**

Dr. Pantaleone's October 29, 2009, functional capacity assessment was completed on a form, as follows:

> GENERAL QUESTIONS CONCERNING THE "STRENGTH" REQUIREMENTS OF LIFTING, CARRYING, PUSHING, AND PULLING REQUIRED BY JOB TASKS.
>
> Could the patient:
>
> 1. Lift 10 pounds maximum?                                 Yes  x      No ___
> 2. Occasionally lift/carry small objects                   Yes  x      No ___
> 3. Sit 6 hours or more per day?                            Yes  x      No ___
> 4. Walk/stand up to 2 hours per day?                       Yes  x      No ___
> 5. Walk/stand from three hours to 6 hours per day? Yes ___  No  x
> 6. Lift 20 pounds maximum?                                 Yes  x      No ___
> 7. Frequently lifting/carrying up to 10 pounds?   Yes  x    No ___
> 8. Walking/standing 6 hours or more per day?      Yes ___   No  x
> 9. Pushing/pulling arm controls?                           Yes  x      No ___

11

10. Pushing/pulling leg controls?                            Yes  x      No ___
11. Walking/standing 8 hours per day?                       Yes ___     No  x
11. Pushing/pulling arm controls (2-6 hours/day) Yes  x      No ___
12. Pushing/pulling leg controls (8 hours/day)   Yes  x      No ___
14. Balance adequately?                                     Yes ___     No  x
15. Reach above the shoulder?                               Yes  x      No ___
16. Manipulate fingers adequately?                          Yes  x      No ___
17. Use hands and wrists adequately?                        Yes  x      No ___
18. Hear adequately?                                        Yes  x      No ___
19. See adequately?                                         Yes  x      No ___

LIMITATIONS IN PHYSICAL SURROUNDINGS:
(Please check all that apply for the patient)

1. Inside ___   Outside ___   Both  x
2. Extremes of temperatures:
   Cold  x   Heat ___   Temperature changes ___
3. Problems with:
   Wetness  x   Humidity  x   Vibrations ____
   Noise ___   Fumes  x   Odors  x
   Dust  x   Poor ventilation  x
   Moving machines, Parts _____

M.D. should comment especially on:
1.   Ability to lift  20 lbs   How much?   Rarely
2.   Ability to bend, stoop, crawl, etc.   NOT ABLE
3.   Use of arms to operate controls?  Right  OK   Left  OK
4.   Use of legs to operate controls?  Right  OK   Left  OK
5.   Numbness in legs?  Right ___  Left ___  Need to walk
     around after sitting? _____
6.   How long could patient sit at one time?   4-6 hours
7.   How long could patient stand at one time?   1-2 hours
8.   How far could patient walk at one time without rest?   1/4 mile
9.   How much weight could patient support on back and legs (minimum,
     maximum, etc.)   MAX 20 lbs

Please give a list of specific instructions given to client about thing [sic] that they should not do:
 MAY SIT & WALK IN MODERATION[.] MAY LIFT 10 lbs.  RARELY 20[.]   NO   BENDING   STOOPING   CLIMBING[.]   AVOID

> COLD/DUST/HUMI[DI]TYDUE TO COPD.
>
> GENERAL COMMENTS ABOUT THIS PATIENT'S ABILITY TO PERFORM WORK OR WORK-RELATED TASKS ON A DAILY BASIS:
>
> I have treated  SPARKS JENNIFER  from  8-30-06  to the present.
>
> In my medical opinion based upon my physical and clinical findings, I believe that [sic]  MAY NOT  ( __may or  x  may not) return to work at this time.
>
> I have read the Social Security guidelines attached hereto as Exhibit "A" hereto and believe  JEN SPARKS  ( __may or  x  may not) engage in substantial gainful activity at this time.
>
> My prognosis of  JEN SPARKS 's return to full time work in a period of  12  months  IS POOR .

(R. 417-21) (sic).

Sparks argues that the ALJ failed to develop the record by asking Dr. Pantaleone for further clarification as to his conclusion that Sparks "may not" work. However, the ALJ can disregard a treating physician's opinion for "good cause," which exists when the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

In this case, the ALJ expressly afforded "controlling weight" to Dr. Pantaleone's

October 29, 2009, assessment of Sparks's specific functional limitations (with the exception of his findings with respect to the ability to bend).[7] (R. 14, 20). As the ALJ explained in detail in her opinion, Dr. Pantaleone's October 2009 assessment of Sparks's specific functional limitations was "supported by his clinical examinations and testing" and by the other medical evidence in the record. (R. 20 (the ALJ's finding that "Dr. Pantaleone is a long-term treating physician whose opinion [as to Sparks's specific physical functional abilities] is well supported by his clinical examinations and testing and is not inconsistent with other substantial evidence."); R. 15-20 (the ALJ's detailed discussion of the medical record)). Thus, the record was more than adequate to support the ALJ's decision to accord "controlling weight" to Dr. Pantaleone's assessment of Sparks's functional limitations rather than to his inconsistent, unsupported, and conclusory statement that Sparks "may not" work.

Further, as the ALJ explained in detail in her opinion, and as the VE testified at the hearing, the limitations stated in Dr. Pantaleone's October 29, 2009, functional capacity assessment are "consistent with sedentary work." (R. 20-21 (the ALJ's explanation as to why someone with the physical functional limitations assessed by Dr. Pantaleone would be capable of sedentary work)). "Sedentary work" is defined as work that "involves lifting no more than 10 pounds at a time," "occasionally lifting or carrying [small] articles," and sitting; in addition, if walking and standing are required occasionally, jobs nevertheless qualify as "sedentary" if "other sedentary criteria are met." 20 C.F.R. 416.967(a). Thus, Dr.

---

[7]As explained, *supra*, the ALJ's rejection of Dr. Pantaleone's finding that Sparks could not bend is inconsequential in this case because it had no effect on the ALJ's ultimate disability determination.

Pantaleone's conclusory opinion that Sparks "may not work" is inconsistent with his own assessment of Sparks's physical functional limitations, such has his findings that Sparks could sit for 6 hours or more per day, walk or stand for up to 2 hours per day, frequently lift and carry up to 10 pounds, occasionally lift and carry small objects, push and pull arm and leg controls, and use her hands, wrists, and fingers adequately. *Cf. Jones* 941 F.2d at 1533 ("This [ALJ's] finding [that the claimant can perform sedentary work] is consistent with Dr. Freeman's, the treating physician's, August 19, 1987 physical capacities evaluation, in which he stated that [the claimant] could sit for six hours, and stand and walk for an hour each during the course of an eight hour day. . . . From the record, it thus appears that Dr. Freeman's opinion of disability is not consistent with his own physical capacities evaluation regarding [the claimaint's] ability to perform sedentary work. For the reasons stated above, we find that the [ALJ] has shown good cause for rejecting Dr. Freeman's opinion that [the claimant] is disabled."). Therefore, ALJ had good cause to reject Dr. Pantaleone's conclusory, unsupported opinion that Sparks was unable to work. *See Shnorr*, 816 F. 2d at 582 ("The [ALJ] properly discounted [the physician's] opinion that [the claimant] was totally disabled because it was not supported by objective medical evidence and was merely conclusory.").

Further, because the extensive, well-developed medical record supported the ALJ's decision to accept Dr. Pantaleone's assessment of Sparks's physical functional abilities, and because the record supported the ALJ's finding that someone with those functional abilities

was capable of sedentary work, there was no "evidentiary gap" requiring the ALJ to further develop the record as to whether Sparks was able to work. Therefore, the ALJ was not required to recontact Dr. Pantaleone for further information regarding his conclusory opinion that Sparks "may not engage in substantial gainful activity at this time," (R. 420), and the ALJ did not err by failing to further develop the record. See *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) ("In evaluating the necessity for a remand [for further development of the record], we are guided by 'whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'").

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the ALJ is supported by substantial evidence and the ALJ did not err as a matter of law. Therefore, the decision of the Commissioner is due to be affirmed. This case will be dismissed with prejudice.

A separate final judgment will be entered.

Done this 20th day of September, 2012.

                                             /s/Charles S. Coody
                                             CHARLES S. COODY
                                             UNITED STATES MAGISTRATE JUDGE